STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION; RUFUS L. ED-
MISTEN, ATTORNEY GENERAL; PUBLIC STAFF; HENRY J. TRUETT;
SWAIN COUNTY BOARD OF COUNTY COMMISSIONERS; CHEROKEE,
GRAHAM AND JACKSON COUNTIES; TOWNS OF ANDREWS, BRYSON
CITY, DILLSBORO, ROBBINSVILLE, AND SYLVA; AND THE TRIBAL
COUNCIL OF THE EASTERN BAND OF CHEROKEE INDIANS; DEROL
CRISP v. NANTAHALA POWER AND LIGHT COMPANY; ALUMINUM
COMPANY OF AMERICA; AND TAPOCO, INC.

No. 8210UC1289

(Filed 21 February 1984)

1. **Utilities Commission § 44— same panel hearing two similar cases—no error**

    Defendants were not denied a fair hearing, nor was it necessary for
    members of a Utilities Commission panel to be disqualified, because the same
    panel of the Utilities Commission conducted the hearing in this case that con-
    ducted a hearing in a previous similar case.

2. **Utilities Commission § 57— finding that two entities are one integrated util-
    ity—supported by evidence**

    The evidence supported a finding that Nantahala and Tapoco are one in-
    tegrated utility where the evidence in the record tended to show that the two
    companies traded all of their power to TVA and received one entitlement in
    return which they divided between them.

3. **Utilities Commission § 55— allocation of cost among utilities—rational**

    The allocation of costs by the Commission between Tapoco and Nantahala
    was supported by the record.

4. **Utilities Commission § 57— concealed benefit findings supported by record**

    The Utilities Commission analyzed the evidence and made findings of fact
    which were supported by the evidence as to concealed benefits which flowed
    from Nantahala to Tapoco and Alcoa under the NFA and the 1971 Apportion-
    ment Agreement.

APPEAL by respondents from order of North Carolina Utili-
ties Commission entered 8 June 1982. Heard in the Court of Ap-
peals 24 October 1983.

This is an appeal from an order of the North Carolina Utili-
ties Commission reducing rates and requiring a refund by Nan-
tahala Power and Light Company and Alcoa. This case is similar
in many ways to another rate case which has been in the ap-
pellate courts of this state. *See Utilities Comm. v. Edmisten, At-
torney General,* 40 N.C. App. 109, 252 S.E. 2d 516 (1979), *aff'd in
part and rev'd in part,* 299 N.C. 432, 263 S.E. 2d 583 (1980) and

State ex rel. Utilities Comm. v. Nantahala Power and Light Co.

*State ex rel. Util. Comm'n v. Nantahala Power,* 65 N.C. App. 198, 309 S.E. 2d 473 (1983). We refer to those cases for a more detailed statement of facts. We note that the New Fontana Agreement (NFA) and the 1971 Apportionment Agreement expired by their own terms on 31 December 1982. Nantahala has now negotiated, independently of Alcoa and Tapoco, an interconnection agreement with TVA. *See* Notice of Decision and Order In the Matter of Nantahala Power and Light Company, Docket No. E-13, Sub. 44, State of North Carolina Utilities Commission.

Nantahala filed on 31 December 1980 an application to increase its rates for retail electrical services effective 1 February 1981. On 16 July 1981 Alcoa and Tapoco were joined as parties to the proceedings. After a panel had taken evidence, the Commission entered an order in which it found that Nantahala, Tapoco, and Alcoa are public utilities under Chapter 62 of the General Statutes. The Commission also found that the NFA and the 1971 Apportionment Agreement resulted in substantial benefits to Alcoa to the significant detriment of the customers of Nantahala and the Nantahala and Tapoco systems should be treated as one entity in setting retail rates for Nantahala. The Commission found that Nantahala's rates were excessive and ordered a refund to its North Carolina retail customers. Alcoa was ordered to make the refunds to the extent Nantahala is financially unable to do so.

Respondents appealed.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, and Executive Director of The Public Staff Robert Fischback, by Staff Attorney Thomas K. Austin, for the Using and Consuming Public.*

*Crisp, Davis, Schwentker and Page, by William T. Crisp and Robert B. Schwentker, for Henry J. Truett; the Counties of Cherokee, Graham, Swain, Jackson; Towns of Andrews, Dillsboro, Robbinsville, Bryson City, Sylva; and the Tribal Council of the Eastern Band of the Cherokee Indians.*

*Joseph A. Pachnowski for the County of Swain and the Town of Bryson City.*

*Western North Carolina Legal Services, Indian Law Unit, by Larry Nestler, for Derol Crisp.*

*LeBouef, Lamb, Leiby and MacRae, by Ronald D. Jones and David R. Poe, for Aluminum Company of America and Tapoco, Inc.*

*Hunton and Williams, by Robert C. Howison, Jr., James E. Tucker, and Edward S. Finley, Jr., for Nantahala Power and Light Company.*

WEBB, Judge.

Appellants contend (1) the Utilities Commission is preempted by Federal Energy Regulatory Commission regulations from setting rates that ignore the NFA and the 1971 Apportionment Agreement; (2) the Commission has unconstitutionally burdened interstate commerce; (3) the Commission has intruded into the exclusive and preemptive jurisdiction of the FERC under the Federal Power Act; (4) the Commission did not base its findings that Nantahala and Tapoco constitute a single integrated system and should be treated as one entity with respect to determining rates to applicant's retail customers on evidence in the record but treated these matters as findings by the Supreme Court; (5) the Utilities Commission has disregarded the determination by the FERC in Nantahala Power and Light Co., 19 FERC [CCH] par. 61, 152 (May 14, 1982) and 20 FERC [CCH] par. 61, 430 (September 30, 1982) that the power exchange agreements are reasonable; (6) that the Commission was in error in finding concealed benefits to Tapoco and Alcoa in the power exchange agreements; (7) that the roll-in is fatally flawed because it does not allocate 100% of the demand factors for Nantahala and Tapoco; and (8) that Alcoa and Tapoco are not North Carolina public utilities. We overrule all these assignments of error on the basis of our opinion reported at 65 N.C. App. 198, 309 S.E. 2d 473 (1983).

Nantahala argues that the Commission has erroneously assumed that our Supreme Court directed in its opinion that the Commission set rates through the implementation of a roll-in. Nantahala contends that as a result the Commission treated certain statements in the Supreme Court's opinion as findings of fact and did not consider some of the evidence. Nantahala says that the Commission did not consider uncontradicted evidence that on an hour to hour basis, which is the only way it can be considered, that Nantahala's generation is poorly suited to meet its load. It

argues that the Commission ignored evidence as to the distinction between primary and secondary energy, which evidence shows that under the NFA and the 1971 Apportionment Agreement, Nantahala fares better than Tapoco and Alcoa. Nantahala also argues that the Commission ignored evidence that Nantahala and Tapoco are not an integrated company but quoted from our Supreme Court's opinion that they are, and accepted our Supreme Court's conclusion as an established fact.

Nantahala argues that the Commission did not properly analyze the NFA and the 1971 Apportionment Agreement and if it had it would have concluded the power exchange agreements are fair and the roll-in used is not fair. It contends that the Commission assumed that Nantahala traded its generation for something of less value, which assumption is not correct. Nantahala argues that the value of its generation as a stand-alone system is not as valuable as the Commission assumed. It does not generate enough power at the right time to serve its customers and not enough reserve for maintenance allowance was assigned to it by the Commission. Nantahala argues that the only way the Commission could assign so small a reserve is by considering it a part of the TVA system which cannot be done without the NFA and the 1971 Apportionment Agreement which the Commission refused to recognize in setting rates.

Nantahala argues further that the Commission erroneously assumed that its generation is of the same value to its customers that it is to TVA. This is not correct because TVA can utilize all the energy when generated by Nantahala while Nantahala's customers cannot do so. For this reason, in a bargain with TVA, Nantahala has to take less energy than it gives in order to secure firm energy which is useful to its customers. Both Nantahala and Tapoco received less energy than they gave, but this does not prove Nantahala was shortchanged in the bargain. It simply proves that neither could bargain with TVA to get the same amount of energy they generated. No analysis was made to determine whether Tapoco had benefitted at the expense of Nantahala in the power exchange agreements, and if such an analysis had been made, it would be found that there was no such benefit.

Nantahala argues that the Commission is wrong in its finding that the NFA is unfair to Nantahala. The evidence is that Nan-

tahala received sufficient energy under it to meet its needs for the first ten years of its existence. It says the evidence shows that the 1963 Agreement was negotiated in conjunction with a sales contract under which Nantahala sold energy to Tapoco. The Commission voided this sales contract and the parties then renegotiated the apportionment agreement. It does not mean the 1971 Agreement is unfair because the 1963 Agreement contained terms more favorable to Nantahala.

Nantahala makes a persuasive argument which we might accept if our function were the same as the Utilities Commission. It is not our function to find the facts or to dictate to the Utilities Commission the weight to be given material facts. The evidence in this case as to the unfairness of the NFA and the 1971 Apportionment Agreement to the customers of Nantahala was similar to the evidence adduced in the case previously decided. *See Nantahala Power*, 65 N.C. App. at 209-10, 309 S.E. 2d at 482-83. The Commission's findings of fact were similar in both cases. We believe the evidence was sufficient to support these findings of fact and we cannot disturb the weight given to the facts found.

The appellants argue that the Commission has set rates that will not allow Nantahala to recover its costs, has required a refund in excess of the net worth of Nantahala and that this confiscates the assets of Nantahala and Alcoa in violation of the Fourteenth Amendment to the Constitution of the United States and Article I, § 19 of the North Carolina Constitution. They also argue that this violates G.S. 62-133 which requires that a public utility be given an adequate rate of return. In light of our holding that the Utilities Commission set a reasonable rate of return we overrule these assignments of error.

Alcoa and Tapoco contend that the cause should be remanded to the Utilities Commission to consider the evidence. We believe that the Commission has made findings of fact based on the evidence which supports its order. This assignment of error is overruled.

[1] Alcoa and Tapoco contend they were denied a fair hearing because the same panel of the Utilities Commission conducted the hearing that conducted the hearing in the previous case. Prior to the hearing, Nantahala made a motion that none of the Commissioners who heard the case in the previous docket be assigned to

this case. This motion was denied. Alcoa and Tapoco argue that since the panel's findings of fact and order in this docket is almost identical to its findings of fact and order in the previous docket, although the evidence is different, this shows the bias of the panel. We do not believe we should hold that because the panel made very similar findings of fact and conclusions of law in both cases that this shows they were biased. We believe the evidence in this case supports the findings of fact. We presume the panel based its findings on the evidence. We do not believe the members of the panel had to be disqualified because they had heard a previous case involving the same parties and issues.

Alcoa and Tapoco argue that the Commission could not pierce the corporate veil of Alcoa and Tapoco. Although the Commission recited "that it should pierce the corporate veil" we do not believe this was done. It did not disregard the corporate entity of either Alcoa or Tapoco. It did treat Nantahala and Tapoco as being one integrated utility for the purpose of setting rates and it did require Alcoa to be responsible for a part of the refund. We do not believe it was necessary to pierce the corporate veil of either Tapoco or Alcoa to do this.

[2]  Alcoa and Tapoco argue that the finding that Nantahala and Tapoco are one integrated utility is not supported by the evidence. They argue that the Utilities Commission readopted its order in the previous docket although the evidence was substantially different. There was evidence in the record that the two companies traded all their power to TVA and received one entitlement in return which they divided between them. Although there is contrary evidence in the record, we believe this was substantial evidence which supports the finding of the Commission.

[3]  Tapoco and Nantahala argue that the allocation of costs by the Commission is without rational basis in the record. They say this is so because the Commission should have held that Tapoco wheels power bought by Alcoa from the TVA and this power should have been included in the power of the combined system. They argue that the Commission based its determination not to include this power on three additional grounds none of which are valid. They are (1) the Alcoa-TVA purchases are far greater than other sources of power transmitted by the combined system; (2)

the Alcoa-TVA purchases are not suited to the public load; and (3) to include the TVA purchases by Alcoa would "warp and twist" the cost allocation methodology resulting in a cost increase to Nantahala. They say that it is irrelevant whether Alcoa's TVA purchases are large or small, that Nantahala's TVA purchases are not suited to Alcoa's Tennessee operations, and yet they are included, and the fact that a factor would increase the cost to Nantahala should not keep it from being used.

In a previous opinion we held that the Commission was not required to include Alcoa's TVA purchases in the roll-in. *See Nantahala Power*, 65 N.C. App. at 212, 309 S.E. 2d at 484. The evidence in that case and in this case shows that Alcoa purchases large amounts of power from TVA in addition to the power it receives from Tapoco. This power is transmitted to Alcoa on Tapoco's lines. Whether or not Tapoco wheels this power we believe it is power purchased by Alcoa outside the unified system and the Commission was not required to consider it in setting a rate.

[4]   In finding that the NFA and 1971 Agreement resulted in concealed benefits to Tapoco and Alcoa at the expense of Nantahala, the Commission relied on evidence which it analyzed very similarly to its analysis in the previous case decided by this Court. *See Id.* at 209-10, 309 S.E. 2d at 482-83. It found that under the Apportionment Agreement Nantahala was deprived of 66,000,000 kwh average energy production annually which went to Tapoco. It found that Nantahala had a demand generating capacity of 81,800 kw but was limited by the agreement to 54,300 kw which requires Nantahala to pay an unnecessary demand charge because of this 27,500 kw loss. It found that Nantahala received no compensation under the apportionment agreement for the value of its upstream storage capacity to Tapoco or for its relinquishment to TVA of the right to control stream flow. It also found that under the 1971 Apportionment Agreement Nantahala did not receive the benefits it should have received as being part of an integrated system. The Commission found that the NFA was unfair to Nantahala in that it was structured to meet Alcoa's need for a certain amount of stable energy and not Nantahala's need for peaking capacity.

Tapoco and Alcoa argue that in this case they have offered evidence which refutes this analysis of the evidence. They say

that the conclusion that Nantahala was deprived of 66,000,000 kwh per year was based on a 1960 Ebasco study which is contradicted by more recent evidence. They also say that the evidence shows that although Nantahala's aggregated annual generation may exceed its sales, much of the energy is generated at a time when it cannot be used by Nantahala's customers. As to what the Commission found was a 27,500 kw loss of demand capacity to Nantahala they say that if this calculation is correct there is no evidence that because Nantahala received less than its generation capacity this gave a benefit to Tapoco. As a matter of fact, Tapoco received proportionately less under the agreement for its capacity than did Nantahala.

As to the upstream storage of water by Nantahala, Tapoco and Alcoa argue that the Federal Power Act does not permit upstream licensees to assess a downstream governmental plant for downstream benefits. Tapoco and Alcoa argue that the NFA was not structured to meet Alcoa's needs any more than Nantahala's needs. Nantahala received firm power under the NFA which is what it needs to serve its customers.

Tapoco and Alcoa make persuasive arguments which we might accept if our function was that of the Utilities Commission. We believe the Utilities Commission has analyzed the evidence and made findings of fact that are supported by the evidence as to the concealed benefits which flow from Nantahala to Tapoco and Alcoa under the NFA and the 1971 Apportionment Agreement.

Tapoco argues that it should be dismissed from the case. It says no order has been entered affecting it and it is not a proper party. It argues that it is incurring substantial legal fees which it should not be required to do. We believe Tapoco is a proper party to this proceeding. Nantahala and Tapoco have been held to be one utility for ratemaking purposes in this case. We hold that Tapoco should remain a party and bound by any order entered in this proceeding.

Affirmed.

Judges ARNOLD and BRASWELL concur.